## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CURTIS ANDING                                    CIVIL ACTION

VERSUS                                           22-627-SDD-RLB

ACE AMERICAN INSURANCE
COMPANY, RUAN TRANSPORT
CORPORATION, AND CARL A.
GREER

## <u>RULING</u>

This matter is before the Court on a *Motion for Partial Summary Judgment on Liability*[1] filed by Plaintiff, Curtis Anding ("Plaintiff" or "Anding"). Defendants, Carl Greer, Ruan Transport Corporation, and ACE American Insurance Company (collectively, "Defendants"), filed an *Opposition*,[2] to which Plaintiff filed a *Reply*.[3] For the following reasons, Plaintiff's motion will be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a rear-end automobile collision. Plaintiff filed suit in state court on August 4, 2022, alleging he sustained serious injuries as a result of the accident.[4] Defendants subsequently removed the case.[5] This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

Plaintiff alleges the following facts: At approximately 5:45 a.m. on February 3, 2022, Plaintiff was operating a 2001 Dodge Ram 1500 pickup truck, and Defendant Carl

---

[1] Rec. Doc. 55.
[2] Rec. Doc. 61.
[3] Rec. Doc. 71.
[4] Rec. Doc. 1-2.
[5] Rec. Doc. 1.

Greer ("Greer") was operating a 2018 Freightliner Cascadia 18-wheeler behind Plaintiff.[6] Both vehicles were traveling south on Highway 3110 in Natchitoches Parish.[7] The parties agree that it was dark and raining at the time.[8] As Plaintiff slowed his vehicle and came to a complete stop in preparation of making a left turn, Greer's vehicle collided with the rear of Plaintiff's vehicle.[9] Plaintiff contends that Greer's negligence caused the accident.[10]

On February 15, 2024, Plaintiff filed the instant motion seeking a determination that Greer is 100% at fault for the subject accident.[11] Defendants oppose the motion, arguing that genuine issues of fact preclude summary judgment on this issue.[12] Defendants concede that Greer's vehicle rear-ended Plaintiff's vehicle.[13] However, Defendants contend Plaintiff bears comparative fault for the accident, arguing that Greer was not able to see Plaintiff's vehicle in time because Plaintiff's taillights were not functioning properly.[14] Defendants argue there are genuine issues of fact regarding whether Plaintiff's unlit or underlit taillights contributed to the accident, or made it unavoidable by creating a "sudden emergency."[15]

---

[6] Rec. Doc. 14, ¶¶ 3, 4.
[7] *Id.*
[8] Rec. Doc. 55-3, ¶ 4.
[9] Rec. Doc. 14, ¶¶ 5, 6.
[10] *Id.* at ¶ 10.
[11] Rec. Doc. 55.
[12] Rec. Doc. 61.
[13] Rec. Doc. 55-3, ¶ 8; Rec. Doc. 61-1, ¶ 8.
[14] Rec. Doc. 61, pp. 1–2.
[15] *Id.*

## II.  LAW AND ANALYSIS

### A.  Summary Judgment

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[16] This determination is made "in the light most favorable to the opposing party."[17] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[18] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[19] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[20]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[21] All reasonable factual inferences are drawn in favor of the nonmoving party.[22] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary

---

[16] Fed. R. Civ. P. 56(a).

[17] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

[18] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 333–34 (1986)).

[19] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).

[20] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[21] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248).

[22] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal citation omitted).

judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[23] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment."[24]

### B. Analysis

#### i. Evidentiary Objections

In opposing Plaintiff's motion, Defendants submitted Greer's voluntary written statement given in connection with a crash report[25] as well as the transcript of a telephone conversation between Greer and investigator Danny Williamson regarding the accident.[26] Plaintiff objects to the Court's consideration of both of these statements, arguing they are inadmissible hearsay.[27]

At the summary judgment stage, whether materials are admissible in their current form is not dispositive because "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"[28] As Plaintiff acknowledges, statements that would technically constitute hearsay at the summary judgment stage can oftentimes be reduced to admissible form later by having the declarant testify to the matter at trial.[29] For this reason, several district courts find that

---

[23] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (internal citation omitted).
[24] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).
[25] Rec. Doc. 61-3.
[26] Rec. Doc. 61-4.
[27] Rec. Doc. 71, p. 2.
[28] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)).
[29] *See, e.g., Guillory v. Carrington Mortg. Servs., LLC,* No. 22-192, 2024 WL 1020555, at *6 (M.D. La. Mar. 8, 2024).

""[w]hether the statements as made by the declarant are hearsay is not relevant in the summary judgment context."[30]

However, Plaintiff claims that in this case, Greer's deposition testimony establishes that he does not remember making either of the two objected-to statements.[31] Because of Greer's lack of memory, Plaintiff argues that Defendants cannot present the statements in an admissible form at trial by calling Greer to testify, and therefore the statements should be ruled inadmissible at the summary judgment stage.[32]

### Rec. Doc. 61-3: Greer's Written Statement in the Crash Report

Plaintiff argues this statement is hearsay that will be inadmissible at trial because Greer testified to his lack of memory of making the statement in his deposition. During the pertinent line of questioning in Greer's deposition, Greer answers affirmatively when asked if he recalls talking to police officers at the scene of the accident.[33] Greer then testifies that he has not seen the police report in connection with the accident.[34] Plaintiff's counsel then reads to Greer portions of the police report consisting of statements *made by the police officer*, not Greer, describing what Greer had told the police officer at the scene about the accident.[35] When asked at his deposition, Greer stated that he did not remember telling the police officer the matters in those statements in the police report.[36] However, Greer was never asked about his recollection *of his own written statement*

---

[30] *Barnett v. Louisiana Dep't of Health*, No. 17-1793, 2023 WL 2467876, at *2 (M.D. La. Mar. 10, 2023) (quoting *Texas Ent. Ass'n, Inc. v. Hegar*, No. 17-594, 2019 WL 13036162, at *15 n.12 (W.D. Tex. Feb. 27, 2019), *aff'd*, 10 F.4th 495 (5th Cir. 2021)).
[31] Rec. Doc. 71, p. 2.
[32] *Id*.
[33] Rec. Doc. 71-2, p. 5.
[34] *Id*.
[35] *Id*. at pp. 5–6. The Court notes that the police officer's statements are not in the record; the only portion of the police report in the record is Greer's voluntary written statement (Rec. Doc. 61-3).
[36] *Id*. at p. 6.

within the police report, which is the only statement contained in Defendants' document.[37]

Accordingly, Plaintiff's contention that Greer testified that he did not remember making the subject statement is inaccurate. Because Plaintiff has not shown that the statement is incapable of being reduced to admissible form at trial, the hearsay objection as to that document is overruled.

## Rec. Doc. 61-4: Greer's Telephone Conversation with Investigator Danny Williams

Greer testifies in his deposition that he "can't remember" speaking with investigator Danny Williams on the telephone about the accident.[38] However, Greer later attests in an affidavit that he recalls giving the statement to Williams and recalls the substance of the conversation.[39] But Plaintiff argues that the Court should not consider this portion of the affidavit because it was an attempt by Defendants to "retract the damaging admissions that [Greer] made in his deposition" regarding his inability to remember this telephone conversation.[40]

Generally, a court considering a motion for summary judgment "must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition."[41] However, under the "sham affidavit doctrine," "a party [cannot] defeat a motion for summary judgment using an affidavit that impeaches, without explanation, [other] sworn testimony."[42] The doctrine "stands for the proposition that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."[43] As the Fifth Circuit explains, "[i]f a party who has been

---

[37] Rec. Doc. 61-3.
[38] Rec. Doc. 71-2, pp. 6–7.
[39] Rec. Doc. 61-2, ¶¶ 5, 6.
[40] Rec. Doc. 71, p. 2.
[41] *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980).
[42] *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).
[43] *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."[44] Notably, the bar for applying the doctrine is high and is typically only applied to "affidavit testimony that is 'inherently inconsistent' with prior testimony."[45] Moreover, "the sham affidavit doctrine is inappropriate where an affidavit supplements, rather than contradicts an earlier statement."[46]

The Court finds the sham affidavit doctrine inapplicable here. Although Greer's deposition testimony regarding his lack of memory of the telephone conversation with Danny Williams is inconsistent with his affidavit testimony stating the opposite, the affidavit does not "manufacture an issue of material fact." Instead, the affidavit only speaks to Greer's memory of making certain recorded statements, which statements themselves may or may not raise issues of material fact.[47] Because the affidavit does not contain actual assertions of material facts, the Court finds that it was not an attempt by Defendants to raise a fact issue by retracting prior deposition testimony. In other words, Greer does not "tell[ ] the same story differently" in his deposition and affidavit.[48]

In sum, the affidavit's inconsistency with the cited deposition testimony only relates to the admissibility question, and it was not a clear attempt by Defendants to manufacture

---

[44] *Id.* (quoting *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).
[45] *Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (quoting *Winzer v. Kaufman Cty.*, 916 F.3d 464, 472 (5th Cir. 2019)).
[46] *Winzer*, 916 F.3d at 473 (5th Cir. 2019) (internal quotation omitted).
[47] The Court also notes that a Texas district court found, in a similar scenario, that the deposition and subsequent affidavit were not inherently inconsistent: "In this case, any discrepancy between Beagle's affidavit testimony and has deposition testimony arises from Beagle not recalling a document in the deposition that he remembered in the affidavit. Those two stories do not necessarily conflict." *Mut. Concepts, Inc. v. First Nat'l Bank of Omaha*, No. CV H-08-03470, 2010 WL 11583298, at *15 (S.D. Tex. Sept. 24, 2010).
[48] *See S.W.S. Erectors*, 72 F.3d at 496.

an issue of fact. For this reason, Plaintiff's objections are "more properly suited to the trial context where the disputed evidence in the precise form sought to be admitted can by (sic) analyzed in its full context."[49] Plaintiff's objection to the Court's consideration of this statement is overruled.

### ii.   Liability Analysis

Because this is a diversity action, the substantive law of Louisiana applies.[50] La. R.S. 32:81(A) provides that "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." As argued by Plaintiff,[51] the "law has established a rebuttable presumption that a following motorist who strikes a preceding motorist from the rear has breached the standard of conduct prescribed by LSA–R.S. 32:81A and is therefore liable for the accident."[52] However, "[a] following motorist ... may rebut the presumption of negligence by proving that he had his vehicle under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances. The following motorist may also avoid liability by proving that the driver of the lead vehicle created a hazard that he could not reasonably avoid (a sudden emergency)."[53]

Further, "[t]he presumption does not in and of itself preclude an apportionment of fault to the lead driver where negligence can be shown."[54] "[N]otwithstanding the

---

[49] *Texas Ent. Ass'n, Inc.*, 2019 WL 13036162, at *15 n.12 (W.D. Tex. Feb. 27, 2019).
[50] *Erie Railroad v. Tompkins,* 304 U.S. 64 (1938).
[51] Rec. Doc. 55-2, p. 4.
[52] *Harbin v. Ward,* 2013–1620 (La.App. 1 Cir. 5/29/24), 147 So.3d 213, at 218.
[53] *Id. See also*, *Domingo v. State Farm Mut. Auto. Ins. Co.,* 10–264 (La.App. 5 Cir. 11/9/10), 54 So.3d 74, at 80 ("The sudden emergency doctrine is an affirmative defense to the presumption of negligence ... The sudden emergency doctrine cannot be invoked by one who has not used due care to avoid the emergency.")
[54] *Matherne v. Lorraine,* 2003–2369 (La.App. 1 Cir. 9/17/04), 888 So.2d 244, 246.

presumption of negligence, a favored motorist can still be assessed with comparative fault if his substandard conduct contributed to the cause of the accident. '[O]nce the presumption of negligence attaches to the defendant, the ordinary rules of comparative negligence apply and, thus, a plaintiff's damages may be reduced by the degree that he was comparatively at fault.'"[55]

Defendants acknowledge the initial applicability of the La. R.S. 32:81 presumption of liability.[56] However, Defendants assert Plaintiff bears some degree of fault for the accident because Plaintiff's taillights were not functioning properly.[57] Defendants point to La. R.S. 32:304, which requires vehicles manufactured after 1962 to be equipped with two rear tail lamps plainly visible from a distance of one thousand feet.[58] Defendants also cite Louisiana state court jurisprudence for the proposition that "a stopped or slowly moving unlighted vehicle upon the highway at night is an unusual obstruction which the following motorist has no reason to anticipate."[59]

Plaintiff posits two overarching arguments in support of its motion: 1) whether or not Plaintiff's taillights were working is immaterial because of certain "admissions" made by Greer; and 2) the evidence shows that Plaintiff's taillights were functional on the date of the accident. Defendants dispute both of these assertions.

---

[55] *Graffia v. Louisiana Farm Bureau Cas. Ins. Co.*, 2008-1480 (La. App. 1 Cir. 2/13/09), 6 So. 3d 270, 274 (quoting *Matherne*, 888 So.2d at 246). The Court notes that Plaintiff misstates the law on this point when he argues that "[Greer] cannot rebut the presumption of fault under La. R.S. 32:81(A), deeming him solely liable for the crash." Rec. Doc. 55-2, p. 10.

[56] Rec. Doc. 61, p. 10.

[57] *Id.* at pp. 10–11.

[58] *Id.* at p. 13.

[59] *Evans v. Olinde*, 609 So. 2d 299, 302 (La. Ct. App. 1992) (citing *Shroyer v. Grush,* 555 So.2d 534 (La.App. 4th Cir.1989); *Gordon v. Commercial Union Ins. Co.,* 503 So.2d 190 (La.App. 4th Cir. 1987); *Bordelon v. State, Dept. of Highways,* 253 So.2d 677 (La.App. 1st Cir. 1971); *Fairfax v. American Cas. Co. of Reading, Pa.,* 236 So.2d 243 (La.App. 3d Cir. 1970)).

### a.  Greer's Purported "Admissions"

The vast majority of Plaintiff's briefing is dedicated to an argument that the taillight issue is irrelevant because of purported "admissions" made by Greer in his deposition. Plaintiff contends Greer has conclusively admitted that "the two precipitating events" leading to the accident were 1) Greer being blinded by headlights of oncoming traffic, and 2) Greer taking his eyes off the road.[60] Plaintiff argues this testimony establishes that Greer cannot rebut the presumption of fault for rear-end accidents, rendering the functionality of Plaintiff's taillights immaterial.[61] Defendants, on the other hand, argue there is other evidence, including statements and other testimony made by Greer, that Plaintiff's faulty taillights contributed to the accident.

The parties' disagreement centers in large part around the following testimony from Greer's deposition. For context, Greer had just taken the position that Plaintiff's vehicle lacked lights on the rear passenger side:

> **Q.** All right. So let me try to do a better job. Is there something about the lights on the rear driver side of my client's vehicle that make you feel like you could not observe those from behind?
> **A.** I'm trying to think of what words to answer that with but I can't come up with it. I didn't see his lights at all until right before I hit him. And I'm not saying lights, I'm saying light. I said lights, but I meant to say light.
> **Q.** Is there something about the circumstances of this accident that make you feel like that if, in fact there was a light on the passenger side as well that you would've been able to see it or you would've noticed it?
> **A.** Yes, sir
> **Q.** All right. What about the circumstances make you believe that although you didn't notice the driver's side light, that you feel like that you would've noticed if there was a passenger side light?

---

[60] Rec. Doc. 55-2, p. 7.
[61] *Id.* at p. 10.

**A.** Yes, sir. Because in the film, if you've seen, I got blinded by car lights. And if you look at the video, when the headlights hit me, I turned my head like that to look at the shoulder of the road. So I took my eyes off of the road for just a few seconds and that's when the collision came.

**Q.** Do you feel that it is my client's (Anding's) fault that you took your eyes off the road?

**A.** No, sir.

**Q.** Okay. Do you feel like that it's my client's fault that you got blinded by oncoming traffic?

**A.** No, sir.

**Q.** Okay. And those are the two precipitating events leading to this wreck, right?

**A.** Yes, sir.

**Q.** And but for those happening, would you agree with me that you would've stopped your vehicle and not been involved in an accident?

**A.** Yes, sir.[62]

Plaintiff also quotes the following additional deposition testimony of Greer:

**Q.** Mr. Greer, do you agree with me that if you're blinded by lights you can't see, correct?

**A.** Yes, sir.

**Q.** You agree with me that if you're not looking at the road, you can't see what's in front of you, right?

**A.** Right.

**Q.** And so if you're blinded and you're not looking at the roadway, regardless of what's in the road, you agree with me that you can't stop for it if you can't see it?

**A.** That's right.[63]

Based on this testimony, Plaintiff contends Greer has conclusively admitted that the accident would not have occurred if he had not been blinded by oncoming headlights and/or looked away from the road.[64] Plaintiff argues that Greer's testimony constitutes a judicial admission establishing Greer is 100% at fault for the accident.[65] Defendants disagree, arguing that to the extent the testimony is considered an "admission," it is only

---

[62] Rec. Doc. 55-4, pp. 7–8.
[63] *Id.* at p. 9.
[64] *Id.*
[65] Rec. Doc. 55-2, p. 8.

an evidentiary, rather than a judicial, admission.[66] Defendants also argue Greer's testimony suggests that if Plaintiff's vehicle had proper taillights, Greer would have been able to perceive the presence of Plaintiff's vehicle before being blinded by oncoming headlights.[67] In reply, Plaintiff reiterates that the testimony constitutes a judicial admission but also that, regardless of the classification of the admission as evidentiary or judicial, the result is the same because Greer never subsequently contradicted or disavowed the subject statements.[68]

The Fifth Circuit defines a judicial admission as "a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention."[69] An evidentiary admission, on the other hand, is "'merely a statement of assertion or concession made for some independent purpose.'"[70] "A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party."[71]

Some Louisiana district court cases support the idea that, "[w]hen a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission."[72] However, Defendant points to three decisions from Texas district courts which found or

---

[66] Rec. Doc. 61, p. 25.
[67] *Id.* at 23 (quoting Greer's testimony at Rec. Doc. 55-4, p. 7).
[68] Rec. Doc. 71, pp. 6–7.
[69] *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).
[70] *Id.* (quoting *McNamara v. Miller,* 269 F.2d 511, 515 (D.C. Cir.1959)).
[71] *Id.* at 477 (quoting *Keller v. United States,* 58 F.3d 1194, 1199 n.8 (7th Cir.1995) (quoting, in turn, John William Strong, *McCormick on Evidence,* § 254 at 142 (8th ed.1992)).
[72] *See, e.g., Siegrist v. Kleinpeter*, No. 02-2365, 2004 WL 797723, at *2 (E.D. La. Apr. 13, 2004) (quoting *Keller v. United States,* 58 F.3d 1194, 1199 (7th Cir.1995)); *see also Sims v. Hughes,* No. 12-421, 2013 WL 1352278, at *1 (E.D. La. Apr. 2, 2013).

suggested that a party's deposition testimony could constitute a judicial admission.[73] In *Blue Spike, LLC v. Audible Magic Corp.*, the Eastern District of Texas concluded that "[t]here is authority in the Fifth Circuit establishing that deposition testimony may constitute case-dispositive judicial admissions," and proceeded to find that the testimony under consideration was a judicial admission.[74]

Without deciding the overarching issue of whether a party can make a judicial admission through deposition testimony, under these facts, the Court finds that Greer's deposition statements are not judicial admissions. The circumstances do not indicate that Greer gave the subject testimony as a formal concession of liability. Although the quoted portions of Greer's testimony do suggest an admission that "the two precipitating events" leading to the accident were oncoming headlights and looking away from the road, and that those events were the "but for" cause of the accident, this was the result of a carefully crafted line of questioning by Plaintiff's counsel to which Greer simply provided "yes" or "no" answers.[75] Further, later on in his deposition, Greer gives the following testimony expressly indicating his view that Plaintiff's taillights contributed to the accident:

> **Q.** Other than your allegation that Mr. Anding's taillights were not properly working at the time of the accident, do you believe that Mr. Anding did anything else to cause or contribute to this accident taking place?
> **A.** I don't think Mr. Anding had anything. His pickup did.
>      …
> **A.** His pickup did by not having the proper lighting.
> **Q.** So you're saying that you believe that the pickup truck, not Mr. Anding, was one of the reasons for the accident taking place?

---

[73] *Johnson v. Idexx Lab'ys, Inc.*, No. 3:06-CV-381-M, 2007 WL 1650416, at *1 (N.D. Tex. June 4, 2007); *Chambers v. Troy-Bilt, LLC*, No. 3:14-CV-569-BF, 2016 WL 5085776, at *4 (N.D. Tex. Sept. 20, 2016); *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3653516, at *6 (E.D. Tex. May 31, 2016).
[74] *Blue Spike*, 2016 WL 3653516, at *6 (citing *Jonibach Mgmt. Trust v. Wartburg Enters.*, 750 F.3d 486, 492 n.2 (5th Cir. 2014), where the Fifth Circuit found that a party's "testimony regarding the initial contract also constitute[d] judicial admissions.").
[75] Rec. Doc. 55-4, pp. 7–9.

      **A.** Yes, sir.[76]

This testimony persuades the Court that Greer did not judicially admit he was 100% at fault for this accident. Further, Defendants' explanation that proper taillights would have made Greer aware of Plaintiff's vehicle before being affected by the oncoming headlights is a plausible interpretation of the testimony. A reasonable juror could interpret Greer's testimony as indicating Plaintiff's taillights contributed to the accident. Similarly, the subsequent testimony specifically addressing Plaintiff's taillights contradicts the purported "admission," which defeats Plaintiff's argument regarding Greer's failure to disavow it. In sum, Greer's testimony does not constitute a judicial admission that he was solely at fault.

      Next, Defendants suggest that portions of Greer's deposition testimony constitute impermissible lay opinion testimony. Defendants argue: "Greer, a layperson, is not qualified to formulate an opinion about the proximate cause of the subject accident involving complex conspicuity issues."[77] At the outset, the Court notes that Defendants failed to specify exactly which portions of the testimony they are objecting to on this basis. Based on the context of the argument in Defendants' brief, the Court assumes the objection relates to the "two precipitating events" line of questioning from Plaintiff's counsel found at Rec. Doc. 55-4, pp. 7–8. Defendants argue that "Greer is not an expert on conspicuity," and the questions of whether Plaintiff's taillights were sufficiently conspicuous and whether the taillights contributed to the accident is a matter for expert testimony.[78] Plaintiff counters that Greer is qualified to testify to the determinations he

---

[76] Rec. Doc. 61-7, p. 15.
[77] Rec. Doc. 61, p. 26.
[78] *Id.* at p. 28.

made as a professional truck driver at the time of the accident, and the testimony at issue posited facts rather than legal conclusions.

A lay witness may only give opinion testimony if the testimony is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[79] As Defendants point out, "[i]n evaluating challenged testimony, the court must distinguish 'between an impermissible opinion on an ultimate legal issue and a mere explanation of the [witness's] analysis of facts which would tend to support a jury finding on the ultimate issue.'"[80]

The Court finds that Greer's testimony is permissible. Greer's testimony surrounding the events leading up to the accident is rationally based on his perception as the driver of the truck and raises causation issues for the jury. Scientific, technical, or other specialized knowledge is not required for a driver to explain his perception of the situation and circumstances that preceded a car accident.

Accordingly, based on the findings above, Plaintiff's first and primary argument in support of summary judgment is rejected. The only factual basis argued by Defendants in opposing Plaintiff's motion is that Plaintiff's faulty taillights contributed to the accident. Thus, the issue is narrowed to whether there is a genuine issue of fact with respect to the functionality of Plaintiff's taillights at the time of the accident.

---

[79] *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 220–21 (5th Cir. 2023) (quoting Fed. R. Evid. 701).
[80] *United States v. Keys*, 747 F. App'x 198, 207 (5th Cir. 2018) (alteration in original) (quoting *United States v. Buchanan*, 70 F.3d 818, 833 n.20 (5th Cir. 1995) (internal quotation omitted)).

### b.  Evidence of Functionality of Plaintiff's Taillights

Plaintiff relies on his own deposition testimony and that of his wife to establish that Plaintiff's taillights were working at the time of the accident. Plaintiff testified that every morning before leaving for work, he habitually checked his brake lights, blinkers, running lights, and headlights by looking at his vehicle's reflection in the fence at his home.[81] Plaintiff stated that, pursuant to his normal "routine," he checked his vehicle's lights on the morning of the accident before leaving his home for work.[82] However, the Court notes that Plaintiff himself never testified specifically that his taillights were in fact working on that morning. Plaintiff's wife testified that Plaintiff routinely checked his lights "every day before we left to go anywhere."[83] She answered affirmatively when asked whether she saw the rear lights of Plaintiff's vehicle illuminated on the morning of the accident before leaving home.[84]

Defendants rely on the following evidence to establish a factual issue regarding Plaintiff's taillights: 1) Greer's deposition testimony and other statements; 2) two dash-camera videos of the accident from the perspective of Greer's vehicle; and 3) an expert's report analyzing the video footage.

Greer's version of the facts as gleaned from his testimony can be summarized as follows: As Greer was proceeding in his vehicle on Highway 6, he noticed Plaintiff's vehicle pass him.[85] At that time, Greer noticed that Plaintiff's taillights were not "in very good working order."[86] Specifically, Greer takes the position that there were no lights on

---

[81] Rec. Doc. 71-4, pp. 2–4.
[82] *Id.* at pp. 5–6.
[83] Rec. Doc. 71-6, p. 2.
[84] *Id.* at p. 5.
[85] Rec. Doc. 61-7, pp. 2–3.
[86] *Id.* at 3.

the rear passenger side of Plaintiff's vehicle.[87] When asked again later, Greer stated he cannot remember what was wrong with the taillights, but he remembers that they were not "functioning right."[88] After losing sight of Plaintiff's vehicle ahead, Greer turned right onto Highway 1.[89] Greer was unaware that before he made his turn, Plaintiff had also turned onto Highway 1.[90] While proceeding on Highway 1, Greer states that he "got blinded by some cars coming on" and then collided with Plaintiff's vehicle.[91] Greer noticed Plaintiff's vehicle almost instantaneously with impact.[92] Immediately before the collision, Greer did not notice any taillights on Plaintiff's vehicle; Greer stated, "He don't have taillights."[93]

Additionally, Defendants submitted Greer's written statement made in connection with the accident report[94] as well as a transcript of a conversation with an investigator regarding the accident.[95] The written statement in its entirety provides: "I Carl Greer was travelling south on Hwy 3110 when I rear ended the vehicle traveling in front of me. I did not see the vehicle in front of me do (sic) to not seeing proper taillight lighting."[96] In the phone conversation with the investigator, Greer states that Plaintiff's "taillights was not properly lit up," and that if Plaintiff had "some decent taillights," the accident may have been prevented.[97] Greer said that the dash-camera video from his vehicle "showed that

---

[87] *Id.* at 8.
[88] *Id.* at 10.
[89] *Id.* at 3. Highway 1 is also referred to by the parties in this case as Highway 3110, which is the roadway where the accident occurred.
[90] *Id.* at 11.
[91] *Id.* at 3.
[92] *Id.* at 4.
[93] *Id.* at 12.
[94] Rec. Doc. 61-3.
[95] Rec. Doc. 61-4.
[96] Rec. Doc. 61-3.
[97] Rec. Doc. 61-4, pp. 1, 8.

[Plaintiff] had taillights but they wasn't very good," and that they were "very low."[98] He also explains that he did not see Plaintiff's vehicle until he "was right on top of him."[99]

Defendants also rely on two videos[100] of the accident recorded by a camera inside Greer's vehicle facing the windshield. Defendants attempt to use the videos to show that Plaintiff's taillights were not functioning properly such that Greer could not identify Plaintiff's vehicle in time to brake and avoid the collision. Both Plaintiff and Defendants retained accident reconstruction experts to analyze the videos. Defendants' expert concludes in his report that "Anding's running taillights were not functioning or on during the time immediately prior to this collision."[101] Plaintiff does not cite any findings of its expert's report in support of its summary judgment.

The Court finds that Plaintiff has failed to meet its summary judgment burden of proving that Greer was 100% at fault in causing this accident. Defendants have presented record evidence establishing a genuine issue of fact regarding the functionality of Plaintiff's taillights at the time of the collision. Plaintiff argues that his and his wife's deposition testimony is "the only affirmative evidence as to the functionality of Anding's taillights" in this case, and "Defendants have no evidence whatsoever to support their argument that Anding's taillights were not functioning properly."[102] In so arguing, Plaintiff ignores Greer's testimony and statements regarding the taillight issue which contradict the testimony Plaintiff relies upon and create an issue of fact. The Court acknowledges

---

[98] *Id.* at 2.
[99] *Id.*
[100] Rec. Docs. 59, 68. The Court notes Plaintiff's objection to the videos because of their lack of clarity (*see* Rec. Doc. 71, p. 3). The Court will not rule on the admissibility of the videos at this time; this evidence is not dispositive of the issues and ruling on its admissibility is not necessary for resolution of this motion. Additionally, Plaintiff retained an expert to analyze and give an opinion on the video.
[101] Rec. Doc. 61-10, p. 18.
[102] Rec. Doc. 71, p. 10.

that Greer's testimony regarding the taillights can be viewed as inconsistent with his testimony suggesting that oncoming headlights and looking away from the road caused the accident. The Court also acknowledges that Greer's statements are at times unclear regarding what exactly was wrong with Plaintiff's taillights; for example, Greer at one point indicated that Plaintiff's vehicle did not have taillights at all,[103] but he elsewhere indicated that the taillights were present but "very low."[104] Another time, Greer took the position that the passenger side of Plaintiff's vehicle had no lights.[105] However, on summary judgment, courts "may not make credibility determinations or weigh the evidence."[106] Accordingly, it is not appropriate at the summary judgment stage to weigh or evaluate the credibility of any of the conflicting testimony. That is specifically the job for the jury.

With respect to the videos and expert reports, Plaintiff explains that "[b]oth accident reconstruction experts in this case have opined that their inspection of Anding's vehicle's taillights was 'inconclusive' as to whether Anding's taillights were working properly at the time of the wreck."[107] This statement does not support Plaintiff's entitlement to summary judgment – it is Plaintiff's burden on this motion to establish the absence of a material factual issue. With respect to the taillights, Plaintiff must show that there is no genuine dispute that they were working properly at the time of the accident. An inconclusive determination from his own expert in this regard does not satisfy this burden, especially with Defendants' expert expressly concluding that Plaintiff's taillights were not functional based on the video footage.

---

[103] Rec. Doc. 61-7, p. 12.
[104] Rec. Doc. 61-4, p. 2.
[105] Rec. Doc. 61-7, p. 8.
[106] *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).
[107] Rec. Doc. 71, p. 8.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to meet his summary judgment burden. There are genuine issues of fact regarding whether Greer was solely at fault for the subject accident. Accordingly, Plaintiff's *Motion for Partial Summary Judgment on Liability*[108] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 5th day of _____June_____, 2024.


_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[108] Rec. Doc. 55.